**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Melissa Velazquez and Frances Fuentes-Noriega, individually and as representatives of a class of similarly situated persons, and on behalf of the Massachusetts Financial Services Company Defined Contribution Plan and the Massachusetts Financial Services Company MFSavings Retirement Plan,<br><br>                                    Plaintiffs,<br><br>v.<br><br>Massachusetts Financial Services Company d/b/a MFS Investment Management, the Massachusetts Financial Services Company Retirement Committee, and the Massachusetts Financial Services Company Retirement Investment Committee,<br><br>                                    Defendants. | Case No. 1:17-CV-11249 (RWZ)<br><br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................1

   I.     PROCEDURAL HISTORY .......................................................................1

        A.     Pleadings and Motion Practice.............................................1

        B.     Discovery and Mediation.....................................................2

        C.     Settlement ...........................................................................3

   II.    PRELIMINARY APPROVAL OF SETTLEMENT ........................................3

   III.   CLASS NOTICE AND REACTION TO SETTLEMENT .................................4

   IV.   REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY .....................5

ARGUMENT ......................................................................................................6

   I.     LEGAL STANDARD ..............................................................................6

   II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.................8

        A.     The Recovery Provided by the Settlement is Fair and Reasonable .......8

        B.     Continued Litigation Would Have Entailed Significant Risk...............9

        C.     ERISA Class Cases Are Complex, Expensive, and Often Lengthy ....11

        D.     The Case Was Ripe for Settlement .....................................13

        E.     The Independent Fiduciary and Class Members Support the Settlement ...........................................................................14

        F.     The Ability of MFS to Withstand a Greater Judgment Is Not a Reason to Withhold Approval of the Settlement in Light of the Other Factors .................................................................15

   III.   THE SETTLEMENT PROCESS WAS FAIR, REASONABLE AND ADEQUATE...........15

   IV.   THE CLASS NOTICE WAS REASONABLE ...........................................15

   V.    THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL ...................17

i

CONCLUSION................................................................................................................18

## TABLE OF AUTHORITIES

### Cases

*Abbott v. Lockheed Martin Corp.*,
    725 F.3d 803 (7th Cir. 2013) ...............................................................12

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................................11

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) .....................................9, 13, 16, 17

*Boyajian v. California Products Corp.*,
    2013 WL 3828804 (D. Mass. July 9, 2013)..........................................16

*Brotherston v. Putnam Invs., LLC*,
    2017 WL 2634361 (D. Mass. June 19, 2017)............................9, 10, 12

*Brotherston v. Putnam Invs., LLC*,
    907 F.3d 17 (1st Cir. 2018)..............................................................9, 12

*Bussie v. Allmerica Fin. Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999) ................................................13, 14

*City of Detroit v. Grinnell Corp.*,
    495 F.3d 448 (2d Cir. 1974).....................................................................7

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996)...........................................................7, 15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).....................................................................15

*Dardaganis v. Grace Capital Inc.*,
    889 F.2d 1237 (2d Cir. 1989).................................................................10

*Donovan v. Bierwirth*,
    754 F.2d 1049 (2d Cir. 1985) ................................................................10

*Gulbankian v. MW Mfrs., Inc.*,
    2014 WL 7384075 (D. Mass. Dec. 29, 2014)................................16, 17

*Hill v. State St. Corp.*,
    2015 WL 127728 (D. Mass. Jan. 8, 2015)................................... *passim*

*Hochstadt v. Boston Scientific Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ..............................................................................17

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ..................................................... 8-9

*In re Lockheed Martin Corp.*,
  412 Fed. Appx. 892 (7th Cir. 2011) .....................................................................12

*In re Lupron Mktg. & Sales Practices Litig.*,
  228 F.R.D. 75 (D. Mass. 2005) ................................................................... *passim*

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................11

*In re Med. X-Ray Film Antitrust Litig.*,
  1998 WL 661515 (E.D.N.Y. Aug. 7, 1998).........................................................13

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
  270 F.R.D. 45 (D. Mass Aug. 6, 2010) .................................................................14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009) .....................................................................................7

*In re Puerto Rican Cabotage Antitrust Litig.*,
  815 F. Supp. 2d 448 (D.P.R. 2011) ......................................................................14

*In re Relafen*,
  231 F.R.D. 52 (D. Mass. Sept. 28, 2005)..............................................8, 12, 13, 15

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................8

*In re StockerYale, Inc. Sec. Litig.*,
  2007 WL 4589772 (D.N.H. Dec. 18, 2007)..............................................8, 12, 14

*In re Sturm, Ruger & Co. Sec. Litig.*,
  2012 WL 3589610 (D. Conn. Aug. 20, 2012) ......................................................15

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)..................................................................7, 15

iv

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
　　2018 WL 2183253 (N.D. Cal. May 11, 2018) .......................................................8

*Kemp-DeLisser v. Saint Francis Hospital and Medical Center*,
　　2016 WL 6542707 (D. Conn. Nov. 3, 2016) ................................................. 10-11

*Krueger v. Ameriprise Financial, Inc.*,
　　2015 WL 4246879 (D. Minn. July 13, 2015) .......................................................11

*Marcoux v. Szwed*,
　　2017 WL 679150 (D. Me. Feb. 21, 2017) ............................................................9

*New England Carpenters Health Benef. Fund v. First Databank, Inc.*,
　　602 F. Supp. 2d 277 (D. Mass. 2009) ................................................................. 7-8

*Nilsen v. York Cty.*,
　　400 F. Supp. 2d 266 (D. Me. 2005) .......................................................................9

*Phillips Petroleum Co. v. Shutts*,
　　472 U.S. 797 (1985)...............................................................................................16

*Puerto Rico Dairy Farmers Ass'n v. Pagan*,
　　748 F.3d 13 (1st Cir. 2014)....................................................................................7

*Reppert v. Marvin Lumber & Cedar Co.*,
　　359 F.3d 53 (1st Cir. 2004)....................................................................................16

*Roberts v. TJX Companies, Inc.*,
　　2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...........................................7, 12, 15

*Rodriguez v. W. Publ'g Corp.*,
　　563 F.3d 948 (9th Cir. 2009) .................................................................................12

*Sacerdote v New York University*,
　　2018 WL 3629598 (S.D.N.Y. July 31, 2018) .......................................................10

*Tibble v. Edison Int'l*,
　　135 S. Ct. 1823 (2015)...........................................................................................12

*Tibble v. Edison Int'l*,
　　2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)......................................................11

*Tussey v. ABB, Inc.*,
　　746 F.3d 327 (8th Cir. 2014) .................................................................................12

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) ...................................................................12

*Tussey v. ABB, Inc.*,
    2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ......................................11

*Tussey v. ABB, Inc.*,
    2017 WL 3594208 (U.S. Oct. 2, 2017)...................................................12

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) ..................8

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) .............................................9, 10

## Statutes, Rules and Regulations

28 U.S.C. § 1715..........................................................................................4

Fed. R. Civ. P. 23(b)(1)(A) ........................................................................17

Fed. R. Civ. P. 23(b)(1)(B) ....................................................................2, 17

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................15

Fed. R. Civ. P. 23(e)(2)................................................................................6

42 Fed. Reg. 18,734-35 (Apr. 8, 1977).........................................................9

68 Fed. Reg. 75632, as amended ..................................................................5

75 Fed. Reg. 33830 ......................................................................................5

## Other Authorities

Restatement (Third) of Trusts, § 100 cmt. b(1) (2012)...............................10

## INTRODUCTION

On June 25, 2019, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' claims against Defendants under the Employee Retirement Income Security Act ("ERISA") relating to the Massachusetts Financial Services Company ("MFS") Defined Contribution Plan and MFSavings Retirement Plan (the "Plans").[1] *ECF No. 96*. The Court found on a preliminary basis that the terms of the Settlement are "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class," and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id. ¶¶ 1(D), 5.* Since that time, an Independent Fiduciary has confirmed that the Settlement terms are reasonable, *see Declaration of Kai Richter in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Third Richter Decl."), Ex. 1,* and none of the Class Members have objected to the Settlement. *Id. ¶ 4.* Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## BACKGROUND

### I.   PROCEDURAL HISTORY[2]

#### A.   Pleadings and Motion Practice

Plaintiffs filed their Class Action Complaint on July 7, 2017, alleging that MFS and related entities breached their fiduciary duties of prudence and loyalty under ERISA by selecting and retaining proprietary investments for the Plans that were costlier and performed worse than nonproprietary alternatives, and by failing to negotiate reasonable recordkeeping fees. *See ECF*

---

[1] All capitalized terms have the meaning assigned to them in Article 2 of the Parties' Settlement Agreement, which appears on the docket at ECF No. 91-1.

[2] The procedural history of the litigation was previously recounted in Plaintiffs' briefing in support of their motion for preliminary approval of the Settlement (ECF No. 90) and their pending motion for attorneys' fees, expenses, and class representative service awards (ECF No. 98). For ease of reference, Plaintiffs have recounted that history here.

*No. 1 ¶¶ 66-123*. On September 25, 2017, Defendants filed a motion to dismiss the Complaint. *ECF No. 23*. The Court granted in part and denied in part Defendants' motion on July 19, 2018. *ECF No. 44*.

Plaintiffs filed their Amended Complaint on September 10, 2018, which remains the operative complaint. *See ECF No. 60*. The Amended Complaint added a named plaintiff and removed the claims dismissed by the Court. The remaining claims included breach of the fiduciary duties of prudence and loyalty (Count I), failure to monitor fiduciaries (Count II), and engaging in prohibited transactions with a party in interest (Count III). *Id. ¶¶ 134-56*.

Defendants filed an Answer to the Amended Complaint on September 24, 2018. *ECF No. 61*. On January 25, 2019, the parties filed a joint stipulation to class certification under Federal Rule of Civil Procedure 23(b)(1)(B), requesting certification of the following class:

> All participants and beneficiaries of the Massachusetts Financial Services Company Defined Contribution Plan and the Massachusetts Financial Services Company MFSavings Retirement Plan at any time on or after July 7, 2011, excluding (i) Defendants, (ii) members of the Defendant committees since July 7, 2011, and (iii) members of the Massachusetts Financial Services Company Board of Directors since July 7, 2011.

*ECF No. 76*. This stipulation was subsequently approved by the Court. *See ECF No. 94*.

## B.    Discovery and Mediation

During nearly two years of litigation, the Parties engaged in extensive discovery, including: (1) production of more than 90,000 pages of documents by Defendants; (2) production of more than 3,500 pages of documents by Plaintiffs; (3) production of more than 2,000 pages of documents by third parties; (4) four depositions of defense witnesses; and (5) the deposition of Plaintiff Frances Fuentes-Noriega. *Declaration of Kai Richter In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("First Richter Decl."), ECF No. 91, ¶¶ 14-17*. In addition, Plaintiffs consulted with experts regarding both liability and damages. *Id. ¶ 18*.

Following this extensive discovery, the Parties engaged in a full-day mediation before David Geronemus of JAMS Mediation on May 9, 2019. *Id. ¶¶ 19.* At the conclusion of the mediation, the Parties reached a settlement-in-principle, and subsequently negotiated the comprehensive settlement agreement that is the subject of the present motion. *Id. ¶ 21.*

### C. Settlement

Under the Settlement, MFS will cause its insurer(s) to contribute $6.875 million to a common settlement fund for the benefit of the class. *Settlement Agreement (ECF No. 91-01) ¶ 2.31.* In addition, the Settlement also provides for meaningful prospective relief. *See Settlement Agreement ¶ 7.1.* Specifically, MFS has agreed to the following relief for at least three years: (1) the Plans' Qualified Default Investment Alternative ("QDIA") will be one or more unaffiliated target date funds that are index funds or are funds-of-funds invested in underlying index funds; and (2) MFS will retain an unaffiliated third-party investment consultant to provide an annual evaluation of the Plans' investment lineup and review the Plans' investment policy statement. *Id.*

## II. PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiffs filed a motion seeking preliminary approval of the Settlement on June 14, 2019. *ECF No. 89.* On June 25, 2019, the Court issued an Order granting preliminary approval of the Settlement. *See ECF No. 96.* In its Order, the Court preliminarily certified the Settlement Class,[3] and found that the terms of the Settlement were "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class." *Id. ¶¶ 1.D, 5.* The Court therefore approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id.* In addition, the Court appointed Analytics Consulting, LLC ("Analytics") to serve

---

[3] The Settlement Class definition tracks the class definition in the Joint Stipulation, with the sole addition of a June 14, 2019 end date to the class period. *See infra* at 17.

as the Settlement Administrator, distribute the Settlement Notices, and carry out the other duties specified by the Settlement Agreement. *Id. ¶¶ 3, 5(B)-(C).*

### III.   CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed the appropriate Settlement Notice (and Former Participant Claim Form, if applicable)[4] to each of the Class members identified by the Plans' recordkeepers. *See Declaration of Caroline Barazesh ("Barazesh Decl."), ¶¶ 7-10.*[5] In total, 4,281 Settlement Notices were mailed, including 2,869 Notices to Current Participants and 1,412 Notices to Former Participants. *Id.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the Class List with the United States Postal Service National Change of Address ("NCOA") Database. *Id. ¶ 8.* In the event that any Settlement Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶¶ 11-12.* As a result, the notice program was very effective. Out of 4,281 Settlement Notices that were mailed, only 2.05% were ultimately undeliverable despite these efforts. *Id. ¶ 13.*

In the event that any Class Members desired further information, Analytics established a settlement website at www.MFS401Ksettlement.com. *Id. ¶ 16.* Among other things, the Settlement Website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) a "Court Documents" page, which includes

---

[4] Former Participants are required to submit a claim form to specify whether they wish to receive a check or have their distribution rolled over into an individual retirement account or other eligible employer plan. *Settlement, ¶ 6.6.*

[5] Analytics also mailed CAFA Notices to the Attorneys General of each U.S. state and territory identified by Defendants as proper recipients, as well as the Attorney General of the United States, pursuant to 28 U.S.C. § 1715. *Barazesh Decl., ¶ 6.*

case and settlement documents for download (including the Former Participant Claim Form, Former Participant Notice, Current Participant Notice, Settlement Agreement, Preliminary Approval Order, and Plaintiff's Motion for Approval of Attorney's Fees, Expenses, and Class Representative Awards and related documents); and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-877-583-0319) as a resource for Class Members seeking information about the Settlement. *Id. ¶ 17.* This telephone number was referenced in the Settlement Notices, and also appears on the settlement website. *Id.*

The deadline to submit objections to the Settlement was November 7, 2019. *ECF No. 96 at ¶ 7.* The deadline has passed, and there have been no objections to the Settlement. *See Third Richter Decl., ¶ 4.*

## IV.   REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 3.1 of the Settlement and applicable ERISA regulations,[6] the Settlement was submitted to an Independent Fiduciary (Newport Trust Company) for review following the Court's preliminary approval order. *See Third Richter Decl. Ex. 1.* "Newport Trust has extensive experience in serving in the capacity of an independent fiduciary on behalf of employee benefit plans in connection with the settlement of litigation," *id at 1,* and "has no relationship to, or interest in, any of the parties involved in the Litigation[.]" *Id. at 2.* In the course of its review, the Independent Fiduciary (1) reviewed court documents and other information and documents in the litigation; (2) interviewed counsel for the parties; (3) evaluated the strengths and weaknesses of the parties' legal and factual arguments in the litigation; (4) reviewed and analyzed

---

[6] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

the terms of the Settlement, including but not limited to the Settlement consideration and the scope

of the Settlement release; (5) reviewed the plan of allocation proposed by the parties; and (6)

reviewed Plaintiffs' request for attorneys' fees. *Id.*

After its review, the Independent Fiduciary concluded that "(i) the Settlement terms, the

$6.875 million Settlement amount provided for in the Settlement, and the amount of any attorneys'

fee award or any other sums to be paid from the recovery, are reasonable in light of the Plans'

likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone; (ii)

the scope of the release of claims is reasonable and is consistent with the release of other ERISA

settlements we have reviewed in the past year;  (iii) the terms and conditions of the transaction are

no less favorable to the Plans than comparable arms-length terms and conditions that would have

been agreed to by unrelated parties under similar circumstances; and, (iv) the transaction is not

part of an agreement, arrangement, or understanding designed to benefit a party in interest." *Id.  at*

*2-3*. Accordingly, the Independent Fiduciary "determined that the Plans should not object to the

Settlement or any portion thereof, including but not limited to the requested attorneys' fees and

costs, and as such authorize[d] the Plans' participation in the Settlement." *Id at 3*.

## ARGUMENT

### I.   LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any

settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e)(2). After notice to

class members and a hearing, "[a]pproval is to be given if a settlement is untainted by collusion

and is fair, adequate, and reasonable." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75,

93 (D. Mass. 2005). The Court "enjoys considerable range in approving or disapproving a class

settlement, given the generality of the standard and the need to balance [a settlement's] benefits

and costs." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) (citation and internal quotation marks omitted) (alterations in original). The First Circuit has expressed a "strong public policy in favor of settlements, particularly in very complex" cases. *Puerto Rico Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014); *see also In re Pharm.*, 588 F.3d at 36 (discussing policy favoring settlements in "hard-fought, complex class action[s]"). There is a presumption in favor of settlement where (as here) the parties have negotiated at arms-length and conducted meaningful discovery. *Roberts v. TJX Companies, Inc.,* 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016) (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, courts in the First Circuit generally review the following factors (the "*Grinnell* factors") to guide their analysis: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *Roberts*, 2016 WL 8677312, at *6 (citing *City of Detroit v. Grinnell Corp.*, 495 F.3d 448 (2d Cir. 1974)).[7] As discussed below, the *Grinnell* factors overwhelmingly favor approval of the Settlement in this case.

---

[7] Although the First Circuit has not explicitly adopted the *Grinnell* factors, numerous district courts in the First Circuit use the *Grinnell* factors to guide their analysis at the final approval stage. *See Hill v. State St. Corp.*, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015); *New England Carpenters*

## II.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.  The Recovery Provided by the Settlement Is Fair and Reasonable

As the Independent Fiduciary noted in its Report, the recovery provided by the Settlement "[is] reasonable in light of the Plans' likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Third Richter Decl. Ex. 1.*  On a gross basis, the $6.875 million recovery represents nearly 40% of the total estimated damages (after accounting for overlap), and over 57% of the damages associated with Plaintiffs' core claim relating to retention of proprietary funds.[8] These percentages compare favorably to other class action settlements. *See, e.g., Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010) (recovery of approximately 27% of conservatively estimated damages was "plainly reasonable"); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that represented approximately one-quarter of estimated total plan-wide losses of $47 million). *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that "represent[ed] nearly 40% of Plaintiffs' core damages claim …, and just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages").[9]

---

*Health Benef. Fund v. First Databank, Inc.,* 602 F. Supp. 2d 277, 280-81 (D. Mass. 2009); *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 72 (D. Mass. 2005); *In re Lupron*, 228 F.R.D. at 93-94; *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007).

[8] Plaintiffs' damages expert, Dr. Steve Pomerantz, calculated the following losses associated with the following alleged breaches:

- Losses from retention of MFS funds: $11.9 million
- Losses from failure to consider collective trust alternatives to MFS Funds: $6.1 million
- Losses from Excess Recordkeeping Expenses: $5.5 million

*First Richter Decl., ¶ 7.*  The first two categories of damages overlap. *Id. at n.5.*

[9] *See also see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5

As noted above, the Settlement also provides for meaningful prospective relief. *Settlement Agreement ¶ 7.1.* Specifically, MFS has agreed to the following relief for at least three years: (1) the Plans' QDIA will be one or more unaffiliated target date funds that are index funds or are funds-of-funds invested in underlying index funds; and (2) MFS will retain an unaffiliated third-party investment consultant to provide an annual evaluation of the Plans' investment lineup and review the Plans' investment policy statement. *Id.* This non-monetary relief further supports approval of the Settlement. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346-47 (D. Mass. 2015) (noting that injunctive relief is "a valuable contribution" to a settlement agreement); *Nilsen v. York Cty.*, 400 F. Supp. 2d 266, 284 (D. Me. 2005) (injunctive relief benefitting class members supports settlement); *Marcoux v. Szwed*, 2017 WL 679150, at *3 (D. Me. Feb. 21, 2017) (same).

### B.     Continued Litigation Would Have Entailed Significant Risk

In the absence of a settlement, Plaintiffs would have faced "a significant element of risk." *In re Lupron*, 228 F.R.D. at 97.  These risks are highlighted by two recent ERISA 401(k) cases involving proprietary funds that resulted in trial judgments in favor of the defendants. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Brotherston v. Putnam Invs., LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017).[10]  The fact that MFS retained its own funds in the Plans does not automatically render it liable for self-dealing under ERISA. *See* Prohibited Transaction Exemption ("PTE") 77-3, 42 Fed. Reg. 18,734-35 (Apr. 8, 1977).   Moreover,

---

(S.D.N.Y. May 13, 2011) (noting that average settlement amounts in securities class actions over the past decade "have ranged from 3% to 7% of the class members' estimated losses") (citation and internal quotation marks omitted).

[10] Although the trial court's decision in *Putnam* was vacated in part by the First Circuit, 907 F.3d 17 (1st Cir. 2018), the defendants in *Putnam* have filed a petition for writ of certiorari with the United States Supreme Court, highlighting the ongoing risk and uncertainty associated with that action.

Defendants denied that they engaged in any wrongdoing and asserted seventeen affirmative defenses in their Answer to the Amended Complaint.

Moreover, even if Plaintiffs had prevailed on liability, there are inherent "uncertainties in fixing damages" in cases such as this. *Dardaganis v. Grace Capital Inc*., 889 F.2d 1237, 1244 (2d Cir. 1989); *see also Donovan v. Bierwirth*, 754 F.2d 1049, 1058 (2d Cir. 1985) (such determinations are "of necessity somewhat arbitrary"); Restatement (Third) of Trusts, § 100 cmt. b(1) (2012) (noting that determination of investment losses in breach of fiduciary duty cases is "difficult").  This would have presented significant additional risks for Plaintiffs. For example, in a recent case involving New York University's defined contribution plan, the court found that "while there were deficiencies in the [fiduciary] Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that ... the Plans suffered losses as a result." 2018 WL 3629598, at *2. Likewise, the trial court decisions in both *American Century* and *Putnam* resulted in adverse rulings on the issue of loss. *See American Century*, 362 F. Supp. 3d at 710-711 finding that "Plaintiffs failed to prove a loss to the Plan"); *Putnam*, 2017 WL 2634361, at *12 (finding that plaintiffs "failed to establish a prima facie case of loss," despite making a persuasive showing that the fiduciaries were "no paragon of diligence" and that the defendants had failed to monitor the plan's investments).[11]  Although Plaintiffs believe that their damages expert developed a robust loss model, it is uncertain how the Court would have ruled on the issue of loss in the event that it found a breach. This uncertainty as to loss further weighs in favor of settlement approval. *See Hill v. State St. Corp.*, 2015 WL 127728, at *9 (D. Mass. Jan. 8, 2015); *Kemp-DeLisser v. Saint Francis*

---

[11] The loss ruling in *Putnam* was subsequently vacated by the First Circuit and is the subject of the defendants' pending petition for writ of certiorari.

*Hospital and Medical Center,* 2016 WL 6542707, at *9 (D. Conn. Nov. 3, 2016) (finding complex damages analysis weighed in favor of ERISA class settlement).[12]

### C.   ERISA Class Cases Are Complex, Expensive, and Often Lengthy

Aside from these risks, continuing the litigation would have resulted in complex and costly additional proceedings, which would have significantly delayed any relief to Class Members, and might have resulted in no relief at all. These considerations also support approval of the Settlement.

It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Ameriprise*, 2015 WL 4246879, at *1; *see also Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). In fact, it is not unusual for ERISA 401(k) cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *4 (noting that the case had originally been filed on "September 11, 2006"); *First Richter Decl. ¶ 11* (noting that "the *Boeing* litigation lasted nearly a decade before it was settled").

The *Putnam* case in this District, which involved similar allegations regarding proprietary funds in Putnam's 401(k) plan, is an excellent case in point. In that case, the plaintiffs suffered an adverse judgment at trial, even though the trial court found that the plan's fiduciaries were "no

---

[12] While the risk of maintaining class action status was not high because Defendants stipulated to class certification, *see ECF No. 76*, it was possible that they could have later moved to decertify the class based on unanticipated case developments.

paragon of diligence." *Putnam,* 2017 WL 2634361, at *12. The plaintiffs then filed an appeal with the First Circuit, won a partial victory on appeal, and are now awaiting the Supreme Court's decision on a petition for certiorari. *See Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018), *mandate stayed pending pet. for cert.* (1st Cir. Oct. 29, 2018). If certiorari is denied, that case will be remanded for further proceedings before the trial court. Alternatively, if certiorari is granted, the appellate proceedings will continue. These twists and turns highlight the long and difficult road faced by ERISA plaintiffs.

If Plaintiffs prevailed at trial in this case, Defendants "would undoubtedly have appealed" any adverse ruling against them. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Relafen*, 231 F.R.D. at 72 (favoring settlement when "an appeal is certain to follow regardless of the outcome at trial"). Moreover, any appeal to the First Circuit might not have ended there, and could have resulted in a remand for further trial court proceedings (as the First Circuit ordered in *Putnam*, and as other circuit courts have ordered in numerous ERISA cases – sometimes multiple times),[13] or further appellate proceedings before the Supreme Court (as happened in *Tibble v. Edison*, 135 S. Ct. 1823 (2015), and as yet may happen in *Putnam*).

At a minimum, the time and expense required to achieve and preserve a victory would have been significant. One of the chief benefits of the Settlement is that it avoids that delay and expense. *See Roberts*, 2016 WL 8677312, at *6; *In re StockerYale*, 2007 WL 4589772, at *3. This further favors approval of the Settlement. *See Hill*, 2015 WL 127728, at *7 (defendants' continued

---

[13] *See, e.g., Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection … claims"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 958-61 (8th Cir. 2017), *cert. denied,* No. 17-265, 2017 WL 3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses"); *In re Lockheed Martin Corp.*, 412 Fed. Appx. 892, 893 (7th Cir. 2011) (remanding for further proceedings on issue of class certification); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803 (7th Cir. 2013) (remanding class certification issue a second time).

"vigorous defense" and the delay in any potential recovery for class members supported approval of settlement); *In re Lupron,* 228 F.R.D at 95 (favoring settlement due to the burden that complex litigation places on the parties); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *3 (E.D.N.Y. Aug. 7, 1998) ("[C]ontinued litigation would require significant amounts of time on the part of the litigants, with accompanying expense . . . . Accordingly, the complexity of this case as well as the probable duration and expense of further litigation favor approval of the proposed settlement.").

### D.   The Case Was Ripe for Settlement

There is no question that the case was ripe for settlement. Simply put, "this is not a case where the bulk of the attorneys' time was spent on negotiations." *In re Relafen,* 231 F.R.D. at 73. By the mediation, the Parties had completed extensive fact discovery, including (1) production of more than 90,000 pages of documents by Defendants; (2) production of more than 3,500 pages of documents by Plaintiffs; (3) production of more than 2,000 pages of documents by third parties; (4) four depositions of defense witnesses; and (5) the deposition of Plaintiff Frances Fuentes-Noriega. *See supra* at 2.  Plaintiffs also had retained experts, furthering informing them of the strength of their case. *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (expert retention before settlement is "probative of the Settlement's fairness"). In addition, the Parties were informed in their negotiations by the Court's order on Defendants' motion to dismiss. *See Bezdek*, 79 F. Supp. 3d at 348 (finding that discovery and the Court's ruling on motion to sufficiently informed counsel for settlement purposes).

The advanced stage of proceedings objectively demonstrates that the settlement negotiations were fully informed and strongly supports approval of the Settlement. *See Hill,* 2015 WL 127728 (finding extensive document production and depositions over more than 2 years to be

13

sufficient discovery); *In re StockerYale*, 2007 WL 4589772 at *3 (settlement before class certification was warranted based on discovery conducted and counsel's internal investigation prior to filing the case); *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 63 (finding production of more than 100,000 documents to be sufficient discovery for settlement approval).

### E.   The Independent Fiduciary and Class Members Support the Settlement

The positive responses from the Independent Fiduciary and the Settlement Class also support the Settlement. After completing the review required by Paragraph 3.1 of the Settlement and applicable law (*see supra* at n.6), the Independent Fiduciary approved "the Settlement terms, the $6.875 million Settlement amount provided for in the Settlement, and the amount of attorneys' fee award or any other sums to be paid from the recovery" and found them to be reasonable. *See Third Richter Decl., Ex. 1 at 2.*   Moreover, the Class Representatives previously submitted declarations in support of the Settlement, *see ECF Nos. 92-93*, and there have been no objections to the Settlement terms or the requested attorneys' fees, expenses, or class representative service awards from *any* Class Member.[14] *See supra* at 5. Such a "favorable reaction of class to settlement… constitutes strong evidence of fairness of proposed settlement and supports judicial approval." *Hill*, 2015 WL 127728, at *8 (citing *Bussie*, 50 F. Supp. 2d at 77; *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D.P.R. 2011)); *see also In re StockerYale*, 2007 WL 4589772, at *2 (finding it "significant" that the named Plaintiffs fully support the settlement). This further supports the reasonableness of the settlement.

---

[14] The Settlement Notices that were approved by the Court disclosed the terms of the Settlement, and also contained a prominent "Statement of Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation Sought in the Class Action." *See Barazesh Decl. Exs. 1 & 2.*

**F.** **The Ability of MFS to Withstand a Greater Judgment Is Not a Reason to Withhold Approval of the Settlement in Light of the Other Factors**

Finally, although MFS has considerable assets, this "defendant oriented" factor is neutral where the Defendant has "deep pockets." *In re Relafen*, 231 F.R.D at 73 (quoting *In re Lupron*, 228 F.R.D. at 97); *see also Hill*, 2015 WL 127728, at *10 ("a defendant is not required to empty its coffers before a settlement can be found adequate.") (quoting *In re Sturm, Ruger & Co. Sec. Litig.*, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012)). Because the other *Grinnell* factors weigh heavily in favor of the Settlement, it should be approved notwithstanding the financial wherewithal of MFS. *See Hill*, 2015 WL 127728, at *10 (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).

**III.** **THE SETTLEMENT PROCESS WAS FAIR, REASONABLE, AND ADEQUATE**

The process by which the Settlement was reached also was fair, reasonable, and adequate. As the Court noted in its Preliminary Order: (A) "The proposed settlement resulted from arm's-length negotiations between Class Counsel and defense counsel overseen by a neutral mediator;" and (B) "The Settlement was negotiated only after Class Counsel had conducted discovery and received pertinent information and documents from Defendants and non-parties[.]" *ECF No. 96 at 1*. Accordingly, the Settlement is entitled to a presumption of fairness. *See Roberts*, 2016 WL 8677312, at *5 (citing *In re Tyco*, 535 F. Supp. 2d at 259; *City P'ship*, 100 F.3d at 1043).

**IV.** **THE CLASS NOTICE WAS REASONABLE**

Finally, the class notice program in this case also was reasonable and satisfied the requirements of Rule 23 and Due Process.  The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator mailed the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address. *See supra* at 4. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985); *accord, Boyajian v. California Products Corp.*, 2013 WL 3828804, at *1 (D. Mass. July 9, 2013) (Zobel, J.) (finding notice via U.S. mail "fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process").

The record reflects that 97.95% of Settlement Notices were successfully delivered. *Barazesh Decl. ¶ 13*. This confirms the effectiveness of the notice program in this case. *See Hill*, 2015 WL 127728, at *1 (where a "substantial majority" of class members receive notice, the notice process is sufficient under Rule 23); *Gulbankian v. MW Mfrs., Inc.*, 2014 WL 7384075, at *4 (finding that notice reaching 80.1% of class members was reasonable).[15] In addition, the notices were accessible to all class members online via the settlement website. *See Bezdek*, 79 F. Supp. 3d at 336 (in addition to first-class mailing, an online portion of the notice program supports the adequacy of the notice).

The content of the Notices also was reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event that one was required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel

---

[15] "Individual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice." *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) (quotation marks and citation omitted). It is sufficient that "the notice ordered is reasonably calculated to reach the absent class members." *Id.*

would seek in attorneys' fees and expenses. *See Barazesh Decl. Exs. 1 & 2.* This was fully consistent with the Court's Preliminary Approval Order, *See ECF No. 96, at ¶ 5(A)*, and more than sufficient to meet the Rule 23 standard.  *See Bezdek*, 79 F. Supp. 3d at 336; *Gulbankian*, 2014 WL 7384075, at *4; *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003) (notice satisfies Rule 23 if it provides class members information to "make an informed and intelligent decision about whether to file a claim…or object to the proposed settlement.").  Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## V.     THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL

In its Order for Preliminary Approval of the Settlement, the Court certified the following Settlement Class:

> All participants and beneficiaries of the Massachusetts Financial Services Company Defined Contribution Plan and the Massachusetts Financial Services Company MFSavings Retirement Plan at any time from July 7, 2011 to June 14, 2019, excluding (i) Defendants, (ii) members of the Defendant committees since July 7, 2011, and (iii) members of the Massachusetts Financial Services Company Board of Directors since July 7, 2011.

*ECF No. 96*. This was consistent with the parties' Joint Stipulation for Class Certification, *ECF No.* 76, and the Court's Order approving the Joint Stipulation. *ECF No.* 94.

In that Order, the Court found, among other things, that: (1) the class was sufficiently numerous; (2) all issues in the Amended Complaint were common among class members; (3) Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel is experienced and competent; (6) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(B) because any individual

17

adjudication would be dispositive of the interests of other class members. *Id*. ¶¶ 1-7. Nothing has changed since the Court approved the Joint Stipulation and certified the class for preliminary approval. Accordingly, the Court should reaffirm its approval of Settlement Class for purposes of final approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the accompanying proposed order.

Respectfully Submitted,

Dated: November 21, 2019

**NICHOLS KASTER, PLLP**

s/Kai Richter
Kai Richter*
Paul J. Lukas*
Brock J. Specht*
Carl F. Engstrom*
Mark E. Thomson*
Benjamin J. Bauer*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
krichter@nka.com
lukas@nka.com
bspecht@nka.com
cengstrom@nka.com
mthomson@nka.com

**BLOCK & LEVITON LLP**
Jason M. Leviton (BBO #678331)
Jacob A. Walker (BBO #688074)
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jason@blockesq.com
jake@blockesq.com

**MKLLC LAW**
Major Khan*
1120 Avenue of the Americas
4th Floor
New York, NY  10036

*Admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2019, a true and correct copy the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.


Dated: November 21, 2019              s/Kai Richter
                                      Kai Richter


19